**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOSE MUNIZ, ) | |
| ) | CASE NO. 1:11-cv-00499 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Jose Muniz ("Muniz") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Muniz's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and REMANDED for further proceedings consistent with this opinion.

# I. Procedural History

On February 22, 2007, Muniz filed an application for POD, DIB, and SSI alleging a disability onset date of August 31, 2006. His application was denied both initially and upon reconsideration. Muniz timely requested an administrative hearing.

On September 30, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Muniz, represented by counsel, testified. Nancy J. Borgeson, Ph.D., testified as an impartial vocational expert ("VE"). On November 6, 2009, the ALJ found Muniz was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

# II. Evidence

## *Personal and Vocational Evidence*

Age fifty-six (56) at the time of his alleged onset date, Muniz is a "person of advanced age" under social security regulations. *See* 20 C.F.R. §§ 404.1563(e) & 416.963(e). Muniz has a limited, tenth grade education and past relevant work as a cement finisher and a brick/block layer. (Tr. 16.)

## *Hearing Testimony*

Muniz testified to the following:

- Since he lost his house, he has been living with a friend for over two years. (Tr. 29.)

- He is right-handed. (Tr. 29.)

- He went to school in Puerto Rico and completed the tenth grade. (Tr. 29.) He took the GED exam but is unsure whether he passed. (Tr. 30.)

- He worked as a cement finisher, brick layer, and block layer for many years. (Tr. 29.)  He was in the Merchant Marines for two years. (Tr. 30.)

- He has no problem reading English language newspapers. (Tr. 30-31.)

- The last time he attempted working, he became very weak after two to three hours and could not finish the job. (Tr. 31-32.)

- He had a business [unspecified in the transcript] that was pretty good up until 2004, when he started losing weight due to diabetes.  He could no longer work at his business due to vision problems. (Tr. 32-33.)

- His health issues are "about the same" since their onset. (Tr. 33.)

- He can lift fifty to sixty pounds "one time or two times, but not on a steady basis." (Tr. 33-34.)  He said he could definitely not lift that much weight for six hours of an eight-hour workday.  Though he had not tried to do so, he did not believe he could lift twenty pounds for six hours of an eight-hour workday because he could not walk for that long.  He thought maybe he could lift twenty pounds for one to two hours (Tr. 39.)

- After about an hour to an hour-and-a-half of exertion he finds himself sitting or sleeping. (Tr. 34.)

- Other than diabetes, he identified physical problems with his head, his eye, and pain in his leg. (Tr. 34.)

- He does not stand since he became sick and, if he stands in place a lot, he has to rub his leg from time to time. (Tr. 34-35.)

- He can only see shadows out of his left eye.  His right eye is much better, but he cannot read without glasses. (Tr. 35.)

- He cannot hear out of his right ear.  He hears better in a closed room than in open space. (Tr. 35.)

- He must strictly follow a diet regimen to control his blood sugar. (Tr. 36.)

- He was prescribed medication for depression, but stopped taking it after it caused him to sleep excessively. (Tr. 36.)  Otherwise, he does not know of any side effects caused by his medications. (Tr. 37.)

- He has not tried any other work other than construction.  He has not applied for jobs that might be easier for him to perform. (Tr. 37.)

3

- When asked if he could perform work that did not involve as much lifting and heavy work as construction, Muniz replied that "I haven't tried, but it's possible." (Tr. 38.)

- During normal days, he alternates between watching television, laying down, and "walking back and forth." Frequently he falls asleep while watching television, as he rarely finishes what he is watching. (Tr. 38.)

- He takes care of his own hygiene. (Tr. 38.)

- His most active undertaking is riding a bike, which he can do for 30 minutes to 1.5 hours. (Tr. 38-39.) Afterwards, he rests for an hour or more. (Tr. 39.)

- He could walk for 1.5 to 2 hours with breaks included. (Tr. 39.)

- He believed he could concentrate on a task for no more than 2 to 2.5 hours. (Tr. 40.)

- He never had any problems getting along with others. (Tr. 40.)

- He drives during daytime. (Tr. 42.)

The ALJ posed the following hypothetical question to the VE:

I want you to assume an individual who is the same age, education, work experience as the claimant. I want you to further assume this individual is able to lift and/or carry fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk for six hours of an eight-hour day, sit for about six hours of an eight-hour day, can frequently climb ramps and stairs but not ladders ropes or scaffolds.... Limited to occasional balancing, needs to avoid work environments with hazards such as dangerous machinery or heights. Has limited depth perception accommodation and field of vision. And is limited to performing simple, repetitive tasks [and no night driving as part of the job].

(Tr. 42-43.)

The VE testified that such an individual could not perform his past relevant work in construction, which the VE described as heavy. (Tr. 42-43.) The VE stated that the hypothetical allowed for medium level, unskilled work. The VE identified the following jobs that the hypothetical individual could perform:

4

> [S]uch a person could perform the job of a hand packer or packager, which is classified by the Department of Labor as medium in physical demands and unskilled at the SVP: 2 level. The Dictionary of Occupational Titles number for that job is 920.587-010. Approximately 1,900 such jobs in northeast Ohio, over 9,000 in the state and over 207,000 nationally. Such a person could be a laundry worker. And that's classified as unskilled. There are mostly medium, but there are jobs at the light level there too. However, at the medium level, such a person – the DOT number is 361.685-018. I'm getting ahead of myself. Classified as medium and unskilled. Approximately 600 such jobs at the medium, unskilled level in northeast Ohio, over 3,100 in the state and approximately 75,000 nationally. Such a person could be a kitchen helper. Also classified as medium and unskilled at the SVP: 2 level. And it's DOT number 318.687-010. Approximately 1,200 such jobs in northeast Ohio, 6,000 in the state and approximately 112,000 nationally.

(Tr. 43.)

The VE further testified that limited depth perception did not affect the jobs identified, but that a person with limitations in their central acuity would be unable to perform the jobs identified. (Tr. 44.) Also, the need for a fifteen minute break – in addition to one morning and afternoon break – would require an accommodation. (Tr. 45.) The VE also stated that if the claimant was off task fifteen percent of the time, he would be unemployable. *Id*.

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Muniz was insured on his alleged disability onset date, August 31, 2006, and remained insured through the date of the ALJ's decision. (Tr. 8, 10.) Therefore, in order to be entitled to POD and DIB, Muniz must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Muniz established medically determinable, severe impairments, due to diabetes mellitus, cataracts, hypertension, and an affective disorder. (Tr. 10.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R.

---

activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Pt. 404, Subpt. P, App. 1. (Tr. 10-11.) Muniz was found incapable of performing his past relevant work, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work. (Tr. 12-16.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Muniz is not disabled. (Tr. 16-17.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

*Credibility Analysis*

Muniz claims the ALJ erred in his credibility assessment. (ECF No. 16 at 11-17.) Specifically, Muniz argues that the ALJ relied on Muniz's hearing testimony to determine that he is capable of medium exertional work, but that the ALJ's interpretation of the testimony was inaccurate and unreasonable. *Id*. The Commissioner, conversely, asserts that substantial evidence supports the RFC determination.

As an initial matter, an ALJ's credibility finding is entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Subjective statements concerning a claimant's symptoms are not enough to establish disability.

*See* SSR 96-7p, Introduction. When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." *Id*. If these claims are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record. *Id*.

Though credibility determinations regarding a claimant's subjective complaints rest with the ALJ, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross*, 373 F. Supp. 2d at 733 (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.") To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. *See* SSR 96-7p, Purpose. Beyond medical evidence, there are seven factors that the ALJ should consider. The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5)

9

treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732 (N.D. Ohio 2005). It is well established that an ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

In the first step of the analysis, the ALJ found that Muniz's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 12.) However, the ALJ did not believe that Muniz's symptoms were credible to the extent they conflicted with his RFC assessment. (Tr. 12-13.) It is unclear from the ALJ's opinion why he discredited Muniz's professed limitations. It is more problematic, however, that the ALJ mischaracterized Muniz's hearing testimony. The opinion reads that Muniz "stated he can lift 50-60 pounds on occasion and *20 pounds more frequently*." (Tr. 12) (emphasis added). Pursuant to 20 C.F.R. § 404.1567(c), medium work involves "lifting no more than 50 pounds at a time with *frequent* lifting or carrying of objects weighing up to 25 pounds." (Emphasis added). As pointed out by Muniz's counsel, "'Frequent' is a term of art in Social Security disability cases that means 'occurring from one-third to two-thirds of the time.'" *Jones v. Astrue*, 2011 U.S. Dist. LEXIS 42948, 10-11 (W.D. Ky. Mar. 22, 2011) (quoting Social Security Ruling (SSR) 83-10, 1983 SSR LEXIS 30.) Therefore, "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of

10

frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10.

The ALJ's interpretation of Muniz's own testimony – that Muniz admitted he can lift twenty pounds "frequently" – is unsupported. (Tr. 12.) Muniz unequivocally testified that he thought maybe he could lift twenty pounds for one or two hours, but not six because he could not walk for that long. (Tr. 39.) Although the ALJ was under no obligation to accept Muniz's testimony as credible, he was obligated to provide reasons for his credibility finding that are sufficiently specific to allow subsequent reviewers, such as this Court, to understand the weight given and the reasons why. Here, the ALJ did not discuss any of the seven factors as it relates to Muniz's ability to perform the lifting requirements of medium work.[2] Instead, the ALJ again cited a statement by Muniz out of context that suggested Muniz admitted to being able to perform medium work. (Tr. 13.) The ALJ asked Muniz the following question: "Do you think you could work a job where you weren't doing as much lifting and heavy work as you were doing on construction?" (Tr. 38.) Muniz responded: "I haven't tried, but it's possible." *Id*. Muniz argues that his response cannot reasonably be construed as an admission that he could perform medium work. (ECF No. 16 at 12.) In addition, Muniz contends that, as a lay-person, he does not know the job demands of the various exertional levels and that the ALJ did not explain the differences to him. *Id*. As such, Muniz argues that any so-called admission is meaningless. *Id*. The Court agrees that Muniz's testimony – that he could "possibly" perform an easier job with less lifting – does not constitute an admission that he could perform medium work. Muniz simply stated that he thought it was "possible" he could perform easier jobs – jobs

---

[2] The vast majority of the ALJ's opinion deals with Muniz's mental impairments.

that are not necessarily medium, but might include sedentary or light exertional levels.[3] Under the circumstances, the ALJ's failure to conduct an analysis in compliance with SSR 96-7p constitutes reversible error.

The Commissioner argues that substantial evidence supports the ALJ's finding that Muniz could perform medium exertional work. (ECF No. 17 at 11-13.) Tellingly, the Commissioner extensively cites the medical records but not the ALJ's actual credibility analysis. This Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, 27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715, n.1, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("We cannot uphold a decision by an administrative agency … if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.") Though the Commissioner may indeed be correct that substantial evidence supports a finding that Muniz could perform medium work, the ALJ failed to comply with applicable procedural requirements when analyzing his credibility.

Furthermore, while the ALJ does mention RFC assessments completed by state agency physicians Esberdado Villanueva, M.D., and Allan M. Berger, M.D., the ALJ does not offer

---

[3] The ALJ's finding that Muniz could perform medium work is crucial, because, had Muniz been limited to light or sedentary work, Rule 202.02 of the medical vocational guidelines would have compelled a finding of "disabled" based on Muniz's advanced age, limited education, and his inability to perform past relevant work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.

12

either assessment as a reason for discrediting Muniz's testimony.[4] (Tr. 15.) To the contrary, it appears that the ALJ ostensibly relied on Muniz's own testimony to find his allegations of disability incredible. However, the ALJ's interpretation of Muniz's testimony is unreasonable.

Muniz asks this Court to award him benefits because, he believes, substantial evidence supports the conclusion that he could perform only light work, a conclusion that would compel an award of benefits. (ECF No. 16 at 17-19.) Muniz, however, can be awarded benefits only if proof of his disability is "compelling." *Facer v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. Here, the shortcoming in the ALJ's opinion was not that his conclusion was incapable of finding support in the record, but rather that it failed to comport with procedural requirements. As such, the appropriate remedy is a remand and not an award of benefits.

---

[4] In relevant part, Dr. Villanueva, on August 7, 2006, opined that Muniz could lift/carry 50 pounds occasionally and 25 pounds frequently, as well as stand/sit/walk for about 6 hours in an 8 hour day. (Tr. 412.) Dr. Berger, on September 21, 2007, opined that Muniz had no exertional limitations. (Tr. 523.)

**VII. Decision**

For the foregoing reasons, the Court finds the Commissioner did not apply proper legal standards. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: February 1, 2012